UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHELLEY NASER,
    Plaintiff,

v.                                                  3:10-cv-573 (WWE)

RAVAGO SHARED SERVICES, LLC,
    Defendant.

## MEMORANDUM OF DECISION ON MOTION TO DISMISS

Plaintiff Shelley Naser commenced this action alleging that defendant Ravago Shared Services, LLC breached her employment contract and terminated her in violation of public policy. Now pending before the Court is defendant's motion to dismiss (Doc. #12) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, defendant's motion will be granted in part.

For purposes of ruling on the motion, the Court assumes that it possesses jurisdiction over this action pursuant to 28 U.S.C. § 1332.[1]

## BACKGROUND

For purposes of ruling on this motion to dismiss, the Court accepts all factual allegations of the complaint as true. In addition, because the employment contract at issue was incorporated by reference in plaintiff's complaint, the Court will also review it.

---

[1] Neither plaintiff's complaint or defendant's notice of removal indicates who defendant's members are or the citizenship of those members. Because diversity jurisdiction depends on the citizenship of a limited liability company's members, defendant, as the party seeking federal jurisdiction, is instructed to file a notice containing information that would substantiate the Court's exercise of jurisdiction under section 1332. See, e.g., Avnet, Inc. v. MTM Techs., LLC, 2009 U.S. Dist. LEXIS 90847 (D. Conn. Sept. 25, 2009) (discussing diversity jurisdiction concerning a limited liability company).

1

**I.      Allegations of Complaint**

Plaintiff Shelley Naser is an individual residing in Wallingford, Connecticut. Defendant Ravago Shared Service is a limited liability company with its principal place of business in Florida. Defendant is a supplier of polymers and raw materials subject to regulation by the Food and Drug Administration. This action was originally commenced in state court and was removed by defendant on the basis of federal diversity jurisdiction.

From March 2008 through October 2008, Naser was employed by Ravago as an independent consultant. At that time, she was also employed as a partner of Santoro Home Improvement. In October 2008, Ravago suggested Naser become a full-time permanent employee as the manager of its domestic and international product services teams. Naser started with Ravago on November 1, 2008 and discontinued her contractual relationship with Santoro.

As a condition precedent to her employment, Ravago required Naser to execute an employment contract.[2] Under the terms of the contract, Naser was to commence her employment with a six-month trial period that began on November 1. After the completion of the trial period, absent termination by either party upon thirty days' advance notice, Naser was to remain employed through the remainder of 2009, as evidenced, plaintiff alleges, by the performance-based bonus program contained in the contract.

---

[2]     Defendant contends that what plaintiff refers to as an employment contract was really an offer letter. The Court refers to the document as both an employment contract and as an offer letter. It is the same document.

On April 30, 2009, the trial period ended and Ravago commended Naser's work performance. Ravago represented to Naser (i) that there would be no change with the domestic and international product services teams and (ii) that Naser could continue her employment for the duration of the contract's term. Based on these representations, Naser continued her employment with Ravago with the expectation that she would be employed throughout the term as specified in the contract.

During her employment and until her termination, plaintiff raised issues regarding defendant's non-compliance with federal regulations administered by the FDA. Specifically, Naser learned that Ravago salespeople and product managers were instructing employees to alter certificates of authenticity and bills of lading for raw materials regulated by the FDA so as to deceive purchasers regarding the products' composition. Upon learning of this, Naser immediately instructed the employees to cease these practices.

In May 2009, Naser's instructions to the employees were brought to the attention of Ravago's management. On May 20, 2009, Navago terminated Naser's employment without compensation.

At all times during the course of her employment, Naser competently and faithfully performed her job duties and responsibilities.

## II.    Employment Contract

Although it was not provided as an exhibit to the complaint, the employment contract was implicitly incorporated by reference. Defendant submitted it to the Court as an exhibit to its motion and, absent objection by plaintiff, the Court will review it. See Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991).

The contract provides:

> Your initial employment with the Company will be for a six-month trial period (through April 30, 2009) at which point the Company or you may terminate this agreement subject to 30 days prior notice. The Company reserves the right to terminate your employment prior to the end of this six-month period with 30 days prior notice.

The contract further provided that Naser would be eligible for a one-time project bonus of $10,000 subject to specific conditions if Naser's employment terminated before the end of the trial period. The relevant condition states:

> If at the end of the six-month period the Company and you decide to continue your employment, in lieu of the project bonus you will be eligible for the Company's performance based target bonus program with a target percentage of 15% of base salary. Your first bonus will be based on 2009 calendar year performance, generally payable in the first quarter of the subsequent year. Your target bonus percentage may be more or less than 15% based on both your individual and the Company's performance.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the

4

reasonable inference that the defendant is liable for the alleged conduct.  Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937 (2009).

**I.     Breach of Contract Claim**

Defendant first moves to dismiss plaintiff's breach of contract claim arguing that the offer letter did not create a binding contract between the parties.  It suggests that the Court read the offer letter as providing the basic terms of Ravago's bonus program and not as providing for a definite term of employment.  Plaintiff responds that there is a valid contract, and even if there is not, there is a valid implied-in-fact agreement between the parties.

Under Connecticut law, employment-at-will is by default, but parties may contract for a specific period of employment.  Taravella v. Town of Wolcott, 599 F.3d 129, 134 (2d Cir. 2010).  An employment relationship not governed by an express contract nonetheless involves some type of implied "contract" of employment.  Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 13 (1995).  Absent such an agreement, the employee would not be working.  Gaudio v. Griffin Health Servs. Corp., 249 Conn. 523, 532 (1999).  Both an express contract and an implied contract require actual agreement between the parties.  D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 211 n.2 (1987).

To prevail on a breach of an implied employment agreement, the plaintiff must allege that the employer had agreed, by words or conduct, to continue his employment absent just cause for termination.  Torosyan, 234 Conn. at 14.  Such agreement may be premised on the employer's representations that the employee will not be terminated under certain circumstances, or absent good cause, or that employment will continue so

5

long as certain conditions are met.  Felekey v. AT&T, 2004 U.S. Dist. LEXIS 25443 (D. Conn. Nov. 3, 2004).  The existence of such an agreement is a question of fact based on the intention of the parties.  Torosyan, 234 Conn. at 15.

Reviewing the offer letter, it is clear that the terms of the letter do not modify the default employment-at-will relationship between Naser and Ravago.  The Court will not accept plaintiff's factual allegations regarding the offer letter when the Court can review the letter for itself.  Plaintiff does not argue that the offer letter is ambiguous.  In light of the text of the letter, it is clear that there was no explicit term of employment provided.  Therefore, the Court will dismiss plaintiff's claim for breach of an express contract.

As to the existence of an implied contract, the Court will not dismiss such claim at this stage.  The complaint adequately includes allegations that there was an implied agreement between the parties for continued employment.  Therefore, the Court will leave plaintiff to her proof on this claim.  Because count one of the complaint is spelled out in terms of an express contract, the Court instructs plaintiff to file an amended complaint addressed to a breach of an implied contract claim.

## II.  Common Law Wrongful Discharge

Defendant moves to dismiss plaintiff's common law wrongful discharge claim because it is preempted by Connecticut General Statutes § 31-51m, which provides the exclusive remedy for whistleblowers.  Plaintiff contends that section 31-51m does not apply to this action because she never reported any violations either externally or internally.  Rather, she alleges that she told her employees to cease intentional mislabeling of the packaging.

Despite the norm of employment-at-will, an employee can assert a claim for

6

wrongful discharge were she "can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474 (1980). Where an employee has a statutory remedy, the common law claim of wrongful discharge is unavailable. See Atkins v. Bridgeport Hydraulic Co., 5 Conn. App. 643, 648 (1985).

Section 31-51m of the Connecticut General Statutes provides, in relevant part:

> No employer shall discharge, discipline or otherwise penalize any employee because the employee ... reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body.... The provisions of this subsection shall not be applicable when the employee knows that such report is false.

Conn. Gen. Stat. § 31-51m(b). Section 31-51m provides the exclusive remedy for a claim for wrongful discharge for a whistleblower. See Campbell v. Town of Plymouth, 74 Conn. App. 67, 74 (2002).

The Court, relying on Burnham v. Karl & Gelb, P.C., 252 Conn. 153 (2000), has held that section 31-51m applies even where the employee's whistleblowing is done internally, and not to public or governmental body. See Key v. Wal-Mart, Inc., 2004 U.S. Dist. LEXIS 21107 (D. Conn. Sept. 29, 2004); see also Parmenter v. Wal-Mart Stores, East, L.P., 2007 U.S. Dist. LEXIS 51478 (D. Conn. July 14, 2007) (finding that section 31-51m preempts common law wrongful discharge action even when elements of statute are not met); McClain v. Pfizer, Inc., 2008 U.S. Dist. LEXIS 17757 (D. Conn. Mar. 7, 2008) ("[T]he whistleblower statute preempts all contract and tort claims for wrongful termination based on whistleblowing activities."). The Court has stated in dicta, however, that Burnham does not stand for the proposition that there can be no claim for

7

common law wrongful discharge in light of section 31-51m as "there is no indication in Burnham, and counsel has not referred the Court to any language in the statute or its legislative history that would suggest that the General Assembly intended to entirely displace Connecticut's common law of wrongful discharge." Rogus v. Bayer Corp., 2004 U.S. Dist. LEXIS 17026, *17-18 (D. Conn. Aug. 25, 2004); see also Volles v. Knopp Neurosciences, Inc., 3:09-cv-1866 (MRK), slip op. at 3 (D. Conn. Mar. 10, 2010) (relying on Rogus to hold that common law claim is not preempted).

In Burnham, the plaintiff asserted a common law wrongful discharge action after she was terminated, having complained to a professional association regarding her employer's practices. The Connecticut Supreme Court held that she would not be able to assert a common law claim because section 31-51m preempted any such claim, even though the plaintiff could not meet the elements of a claim under section 31-51m(b) insofar as she had not complained to a "public body." Thus, even though the plaintiff could not assert a remedy under the statute, she similarly could not assert a common law claim. Although it quoted approvingly from the Connecticut Appeals Court's decision in Atkins that the "cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated," Burnham, 252 Conn. at 159-60, the Supreme Court nonetheless expanded the preemptive reach of section 31-51m to cases where the employee would be left without any remedy whatsoever. Burnham was left in legal limbo.

Unfortunately for plaintiff in the instant case, she too will likely be left in a legal

8

limbo. Under Burnham, her common law claim for wrongful discharge is preempted, and she has not asserted a claim under section 31-51m.[3] Plaintiff's citation to Rogus is unpersuasive. First, the Court's statement was dicta. Second, the Court has already rejected it. See Parmenter, 2007 U.S. Dist. LEXIS 51478 at *21-22 (rejecting Rogus dicta); but see Volles, 3:09-cv-1866 (MRK), slip op. at 3. Third, to this Court, it is not the true reading of the Burnham decision. The Rogus decision draws a distinction between reports to a public body and internal reports, while the text of section 31-51m does not draw such a distinction. Instead, the statute only draws a distinction between public bodies and non-public bodies. In light of the Burnham holding that section 31-51m preempts a whistleblower claim even when reports are made to non-public bodies, the Rogus distinction does not hold water. The Court will accordingly dismiss plaintiff's common law wrongful discharge claim.

### III.     Breach of Implied Covenant of Good Faith and Fair Dealing

Count three of plaintiff's complaint asserts a claim for wrongful discharge in violation of the implied covenant of good faith and fair dealing. The Burnham analysis above applies to a claim for wrongful discharge that sounds in contract as well as in tort. Therefore, because plaintiff's wrongful discharge tort claim fails so too must plaintiff's contract claim fail. See Iosa v. Gentiva Health Servs., 299 F. Supp. 2d 29 (D. Conn. 2004).

---

[3]     The Court takes no position on whether plaintiff would be able to assert such a claim.

## CONCLUSION

In light of the foregoing reasons, defendant's motion to dismiss (Doc. #12) is GRANTED in part. Plaintiff is instructed to file an amended complaint consistent with this ruling within fourteen days of the filing of this ruling, and defendant is instructed to file a jurisdictional notice as indicated above.

Dated at Bridgeport, Connecticut, this 20th day of September 2010.

/s/
Warren W. Eginton
Senior United States District Judge